## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TARA JANE MCNEAL,          )
                                     )
        Plaintiff,          )
                                     )
        v.                   )     Civil Action No. 23-350-SRF
                                     )
MARTIN O'MALLEY,[1]       )
Commissioner of Social Security,  )
                                     )
        Defendant.        )
                                     )

---

Marc H. Snyder, ROSEN MOSS SNYDER & BLEEFELD, LLP, Wilmington, DE.

      Attorney for Plaintiff.

David C. Weiss, United States Attorney, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF DELAWARE, Wilmington, DE; Andrew C. Lynch, Special Assistant United States Attorney; Brian C. O'Donnell, Associate General Counsel; Brittany J. Gigliotti, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, MD.

      Attorneys for Defendant.

---

## <u>MEMORANDUM OPINION</u>

April 2, 2024
Wilmington, Delaware

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023 and is substituted for Kilolo Kijakazi as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**FALLON, U.S. MAGISTRATE JUDGE:**[2]

Plaintiff Tara Jane McNeal ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) on March 28, 2023 against defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"). (D.I. 2) Plaintiff seeks judicial review of the Commissioner's final decision denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. Currently before the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.[3] (D.I. 11; D.I. 21) For the reasons set forth below, Plaintiff's motion for summary judgment (D.I. 11) is DENIED, and the Commissioner's cross-motion for summary judgment (D.I. 21) is GRANTED.

## I.      BACKGROUND

### A. Procedural History

Plaintiff filed an application for DIB on November 18, 2020, alleging a disability onset date of February 1, 2018 due to chronic back pain, scoliosis, aspindalothesis, and bipolar depression. (D.I. 8 at 123-26, 157-58) Plaintiff subsequently amended her alleged disability onset date to February 16, 2021. (*Id.* at 143) Plaintiff's claims were denied initially and upon reconsideration in 2021. (*Id.* at 73-76, 87-90) At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on July 20, 2022. (*Id.* at 33-51) The ALJ issued an unfavorable decision denying Plaintiff's request for benefits on August 5, 2022. (*Id.* at 20-28) The Appeals Council

---

[2] On November 2, 2023, the parties consented to the jurisdiction of the undersigned Magistrate Judge to conduct all proceedings in this action, including the entry of final judgment. (D.I. 24)
[3] The briefing on the pending motions is found at D.I. 12 and D.I. 22. On November 20, 2023, Plaintiff filed a notice of her intention to rest on her opening brief and waive her right to a reply brief. (D.I. 26)

subsequently denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 6-8)

Plaintiff brought this civil action challenging the ALJ's decision on March 28, 2023. (D.I. 2) On September 14, 2023, Plaintiff filed her motion for summary judgment (D.I. 11), and the Commissioner cross-moved for summary judgment on October 27, 2023 (D.I. 21). Briefing on the pending motions is now complete.

### B. Medical History

Plaintiff was 42 years old on the alleged onset date. (D.I. 8 at 53) Plaintiff has a high school education and has past relevant work as a caretaker, childcare provider, consultant at a newspaper company, and receptionist. (*Id.* at 144, 159) The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, and scoliosis. (*Id.* at 22) Plaintiff challenges the ALJ's conclusion at step two that her mental impairments are non-severe. (D.I. 12 at 5-11) Because Plaintiff does not challenge the ALJ's factual or legal conclusions regarding her physical impairments, the court does not address those conditions in detail here.

### 1. Medical evidence

On January 8, 2018, about three years before the amended onset date, Plaintiff attended a therapy intake evaluation with licensed clinical social worker E. Bibee-Friedman. (D.I. 8 at 293) Plaintiff reported symptoms of fatigue, lack of focus and concentration, tearfulness, and irritability after her medications were discontinued. (*Id.*) She was diagnosed with bipolar disorder, moderate depression, and attention-deficit hyperactivity disorder ("ADHD"). (*Id.* at 294) Later that month, Plaintiff reported that her symptoms had improved when she began taking Lamictal and Effexor XR for her bipolar disorder and depression. (*Id.* at 289) She

indicated that she was still disorganized and unfocused because she had not been prescribed Adderall for her ADHD. (*Id.*) In February of 2018, Plaintiff reported that she was doing well on her current medications, she was sleeping and eating well, and her energy and motivation were good. (*Id.* at 303) Her mental status examination was normal, and she received a refill of her ADHD medication. (*Id.* at 303-04)

Plaintiff also saw David Nixon, M.D., for treatment of her mental conditions. In June of 2018, Dr. Nixon indicated that Plaintiff had been experiencing depressive symptoms, including diminished interest in her day-to-day activities, a lack of concentration, and a string of unrestrained buying sprees. (*Id.* at 314) These symptoms continued through 2020. (*Id.* at 300, 317, 320, 323, 326, 329, 333) Upon mental examination, Plaintiff consistently exhibited poor attention and concentration, fair impulse control, and her memory was within normal limits. (*Id.* at 301, 315, 318-19, 321-22, 324, 327, 330-31, 334)

Plaintiff continued seeing Dr. Nixon for medication checks about once every three to four months after the February 16, 2021 amended onset date. (*Id.* at 944-46, 949-51; D.I. 8-1 at 347-55) Dr. Nixon's notes and examination findings remained largely the same, documenting Plaintiff's poor concentration and fair impulse control, but otherwise describing normal findings. (*Id.*) In February of 2022, Plaintiff reported having low energy and exhibited a depressed mood after experiencing the loss of family members, and Dr. Nixon increased her dose of Effexor XR. (D.I. 8-1 at 351-52) The following month, she reported improvement in her symptoms attributable to the increased medication dosage, and her mood was described as euthymic. (*Id.* at 348)

### 2.  Medical opinions

Plaintiff's mental health treatment records were evaluated by state agency psychologist Christopher King, Psy.D, on February 22, 2021.  (D.I. 8 at 52-61)  Dr. King opined that Plaintiff had no limitations in her ability to understand, remember, or apply information; moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace; and mild limitations in her ability to adapt or manage herself.  (*Id.* at 56, 59)  He noted that her treatment consisted of medication management and social work counseling, her condition was stable with medication, and she could manage basic daily activities independently.  (*Id.* at 56)  He identified no evidence of marked mental limitations that would preclude employment.  (*Id.*)  State agency physician Alex Siegel, Ph.D confirmed Dr. King's findings on reconsideration in December of 2021.  (*Id.* at 66, 69-70)

On July 14, 2022, Dr. Nixon completed a questionnaire assessing the impact of Plaintiff's mental conditions on her ability to function from June 26, 2018 through the date of the evaluation.  (D.I. 8-1 at 473-77)  He opined that Plaintiff was seriously limited or unable to meet competitive standards in her mental ability to perform unskilled, semi-skilled, and skilled work.  (*Id.* at 475-76)  Dr. Nixon further determined that Plaintiff exhibited marked limitations in her activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.  (*Id.* at 477)  He indicated that Plaintiff had three or four episodes of decompensation of extended duration and would be absent from work more than four days per month due to her symptoms.  (*Id.*)

### 3.  Nonmedical evidence

On January 14, 2021, Plaintiff completed a function report outlining the symptoms of her conditions and their effect on her activities of daily living.  (D.I. 8 at 170-77)  Plaintiff reported

that she can maintain her own personal care without assistance, and she cares for her mother's pets and makes sure her mother takes her medication. (*Id.* at 171)  She cooks simple meals and performs light housework. (*Id.* at 172)  She can drive a car independently, go shopping, and manage her own finances. (*Id.* at 173)  Plaintiff regularly spends time with her adult children and has no problems getting along with others. (*Id.* at 174)

Plaintiff identified certain activities she can no longer do because of her physical conditions. (*Id.* at 174-75)  With respect to her mental conditions, she indicated that she has trouble with her memory, although she also reported that she needed no reminders to go places, take care of her personal needs, or take her medicine. (*Id.* at 172-75)  She said that she has difficulty getting along with others and felt excluded and disliked due to her depression, (*id.* at 175), but she also reported no problems getting along with authority figures, people at work, family, friends, neighbors, or others (*id.* at 174-75).  She checked a box indicating that she has difficulty following instructions, but she described her ability to follow written and spoken instructions as "good." (*Id.* at 175)  She represented that she has trouble completing tasks and concentrating, while also saying that she can always pay attention and finish what she starts. (*Id.*)  Plaintiff explained that her bipolar depression causes her to avoid socializing, and her ADHD causes her to start many tasks at a time, leaving some tasks incomplete. (*Id.* at 177)

### C. Hearing Before the ALJ

#### 1. Plaintiff's Testimony

During the hearing before the ALJ on July 20, 2022, Plaintiff testified that she lives with her mother, and she has a high school diploma and a driver's license. (D.I. 8 at 38-39)  She previously worked for a newspaper company providing customer service, performing office duties, and managing advertisements and classified ads. (*Id.* at 39)  She also worked as a

babysitter and provided care for her mother, who is disabled. (*Id.* at 40)

Plaintiff testified that she suffers from bipolar disorder, depression, and ADHD. (*Id.* at 41) These conditions impair her memory and make it difficult to focus or complete tasks. (*Id.* at 42) She explained that, although her mood fluctuates, she is depressed most of the time and often avoids interaction. (*Id.*) Her medications make her sleepy, and she and she believes the medicine contributes to her difficulties with memory. (*Id.*) When describing her activities of daily living, Plaintiff said that she can cook small meals for herself and her mother, and she perform household chores with frequent breaks. (*Id.* at 44-46) She testified that she does not engage in social activities and does not regularly leave the house. (*Id.* at 44-45)

### 2. Vocational Expert Testimony Before the ALJ

At the administrative hearing, the ALJ posed the following hypothetical to the vocational expert ("VE"):

> I'd like you to consider an individual of the claimant's age, education, and work history who can perform work at the sedentary exertional level, who can occasionally climb ramps, and stairs, but never climb ladders, ropes, and scaffolds. Who can occasionally balance and stoop, but never kneel, crouch, or crawl. Who can occasionally reach overhead with both arms. Who can frequently handle and finger with both arms. And who can have occasional exposure to extreme cold and hazards such as moving machinery and unprotected heights. Could this individual perform any of the claimant's past work?

(D.I. 8 at 48) In response to the ALJ's hypothetical, the VE testified that such a hypothetical individual would be able to perform Plaintiff's past work as a newspaper customer service representative, a receptionist, and a classified ad clerk. (*Id.* at 48-49) The ALJ asked the VE if these positions would still be available to a hypothetical individual who would also require four 10-minute breaks each workday, and the VE testified that this additional limitation would preclude employment. (*Id.* at 49)

In response to questioning by Plaintiff's counsel, the VE testified that a hypothetical

individual who is unable to maintain concentration and focus for two-hour segments would not

be able to perform any of Plaintiff's prior work. (*Id.* at 50)

### D. The ALJ's Findings

Based on the factual evidence in the record and the testimony by Plaintiff and the VE, the

ALJ determined that Plaintiff was not disabled under the Act for the relevant time period from

the February 16, 2021 amended disability onset date through the date of the ALJ's decision on

August 5, 2022. (D.I. 8 at 21)  The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since February 16, 2021, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; and scoliosis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally balance and stoop, but never kneel, crouch, or crawl; can occasionally reach overhead with the bilateral upper extremities; frequently handle and finger with the bilateral upper extremities; and tolerate occasional exposure to extreme cold and hazards, such as moving machinery and unprotected heights.

6. The claimant is capable of performing past relevant work as a customer service representative.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2021, through the date of this decision (20 CFR 404.1520(f)).

(*Id.* at 22-28)

## II.   STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

## III.   DISCUSSION

### A. Disability Determination Process

Title II of the Act affords insurance benefits to people who contributed to the program and who have a disability. *See Pearson*, 839 F. App'x at 687 (citing 42 U.S.C. § 423(a)(1)). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). To qualify for DIB, a claimant must establish disability prior to the date last insured. 20 C.F.R. § 404.131 (2016); *Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If

the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at § 404.1520(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at § 404.1520(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* at § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. § 404.1520(g); *Plummer*, 186 F.3d at 428. In other words, the

Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B.  Whether the ALJ's Decision on Plaintiff's Mental Impairments is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding her mental impairments of bipolar disorder and ADHD non-severe at step two of the sequential analysis because he disregarded her mental diagnoses and treatment, as well as every medical opinion of record regarding her mental limitations. (D.I. 12 at 5-10) According to Plaintiff, the ALJ's error at step two of the analysis was not harmless because he failed to account for Plaintiff's mild mental limitations in his RFC finding. (*Id.* at 10)

Substantial evidence supports the ALJ's step two determination that Plaintiff's mental impairments are not severe. An impairment is "not severe" only if it involves a "slight abnormality" that has "no more than a minimal effect" on the individual's ability to work. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Here, the ALJ cited regular examination findings showing Plaintiff's memory was within normal limits, as well as Plaintiff's own statements that she needs no special reminders to take care of her personal needs. (D.I. 8 at 23) The ALJ also noted that Plaintiff has a boyfriend, provides care for her disabled mother, shops in stores, visits her daughter's house several times per week, handles her finances, and performs light chores. (*Id.*) The ALJ sufficiently articulated his reasons for finding that Plaintiff's mental impairments did not qualify as severe at step two of the analysis, and he

supported his reasoning with citations to the evidentiary record.  "Courts are not permitted to re-weigh the evidence or impose their own factual determinations."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

In evaluating this evidence as it pertains to the "paragraph B" criteria,[4] the ALJ found Plaintiff had no limitations interacting with others or understanding, remembering, and applying information, and only mild limitations in the areas of adapting or managing oneself and concentrating, persisting, or maintaining pace.  (D.I. 8 at 23)  The ALJ was not required to include limitations based on mild mental impairments in the hypothetical or the RFC assessment at step four of the sequential analysis.  *See Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (holding that there was "no compelling reason" why mild mental impairments should be included in hypothetical where claimant's evidence "was generally very thin[.]"); *Charlier v. Kijakazi*, C.A. No. 20-1327-CFC-JLH, 2022 WL 606327, at *4 (D. Del. Feb. 28, 2022) (rejecting the argument that the ALJ was required to include mental limitations in the RFC after making a step two finding of "mild" limitations in the paragraph B criteria).

Substantial evidence also supports the ALJ's decision to reject three medical opinions that concluded Plaintiff's mental impairments caused moderate to severe limitations in Plaintiff's functional abilities.  *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC.").  The ALJ determined that the two opinions by state agency psychologists were not persuasive because they were based on Plaintiff's medical records

---

[4] The "paragraph B" criteria are used to assess four broad areas of functional limitation: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404.1520a(c)(3); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00E.

predating the amended onset date of February 16, 2021, and mental examination findings post-dating the amended onset date were largely within normal limits. (D.I. 8 at 27) The ALJ also rejected the opinion of Dr. Nixon because it was inconsistent with Plaintiff's self-described activities of daily living and Dr. Nixon's own treatment records, which showed Plaintiff remained stable with medication management and contained no objective findings or explanation to support Plaintiff's subjective complaints. (*Id.*) There is no requirement that an ALJ's ultimate findings must match a medical opinion of record. *Niemczyk v. Kijakazi*, 2022 WL 889956, at *6 (M.D. Pa. Mar. 25, 2022) (affirming ALJ's rejection of state agency psychologist's assessment of a severe mental impairment).

Plaintiff relies on the court's decision in *Roberts v. Kijakazi* in support of her position that the ALJ improperly rejected the medical opinion evidence based on her own lay opinion. (D.I. 12 at 10) (citing *Roberts v. Kijakazi*, C.A. No. 21-14-CJB, 2022 WL 17403479, at *12 (D. Del. Dec. 2, 2022)). In *Roberts*, the medical opinions were rendered by the claimant's treating practitioners who assessed the claimant's condition over an extended period and made specific, consistent findings that the claimant would not be able to work based on those assessments. *Roberts*, 2022 WL 17403479, at *2-3. Here, in contrast, the ALJ explained that Dr. Nixon's treatment notes did not support the level of impairment suggested by his opinion. (D.I. 8 at 27)

The ALJ's assessment of the medical opinions in the instant case is comparable to the circumstances in *Neely v. Kijakazi*, where the court found the ALJ properly rejected the depression-related medical opinion of the claimant's mental health practitioner finding a "moderate severe degree of impairment" in certain areas. C.A. No. 20-1551-CJB, 2022 WL 9987520, at *9 (D. Del. Oct. 17, 2022). The ALJ in *Neely* explained how a limitation in concentration, persistence, and maintaining pace was not consistent with treatment notes

showing the claimant had intact attention and concentration, normal mental status exam findings, and no hospitalizations or participation in psychotherapy. *Id.* The court held that substantial evidence supported the ALJ's conclusion that Plaintiff's depression had "no more than a minimal effect on [her] ability to work." *Id.* Similarly, Dr. Nixon's treatment records "document limited findings of poor attention/concentration and fair impulse control without further explanation, and she appears to remain stable with medication management." (D.I. 8 at 22) The ALJ properly found that these records were not consistent with Dr. Nixon's opinions of marked limitations in certain "paragraph B" criteria. (*Id.*)

Because the administrative record contains sufficient evidence to support the ALJ's factual determinations at step two of the sequential analysis, the low threshold of the substantial evidence standard is met. *Biestek*, 139 S. Ct. at 1154.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (D.I. 11) is DENIED, and the Commissioner's cross-motion for summary judgment (D.I. 21) is GRANTED. An Order consistent with this Memorandum Opinion shall issue.